**Settlement Agreement**

Fish Potter Bolaños, P.C. ("FPB" or the "Firm"), David Fish (individually and together with FPB, "Fish"), Maria de las Nieves Bolaños ("Nieves"), and Robin Potter (individually "Potter" or "Robin," and together with Nieves, "PB") (Fish and PB collectively referred to as the "Parties"), hereby enter into this Mutual Release and Settlement Agreement (the "Settlement Agreement"), REDACTED with an effective date of this Settlement Agreement to be the earlier of the date it is executed by all Parties or May 31, 2024 (the "Effective Date").

REDACTED

8. Robin's engagement with the Firm, and inclusion on the Firm's malpractice policy, will terminate on May 31, 2024; REDACTED

    Until the termination of her engagement with the Firm:

    a. Robin shall continue to have access to FPB's information technology systems, including billing systems, and to use their Firm email accounts (which will remain active and accessible by her until the later of the termination of her engagement with the Firm or until the forwarding and automatic reply functions referenced below have been completed REDACTED

    and through December 31, 2024, FPB will employ an "automated reply" function to the email account utilized by Robin during her term with FPB, stating as follows:

> Robin Potter is no longer working with Fish Potter Bolaños, P.C. Robin Potter's updated contact information is:
>
> Robin Potter, Attorney
> Robin Potter & Associates
> 111 East Wacker Drive -Suite 2300
> Chicago, IL 60601
> Telephone: (773) 575-6216
> robin@potterlaw.org

Page 1 – Exhibit 2 FBP Settlement Agreement

    b. Robin shall be paid as referenced on Exhibit C.

9. The Parties intend that Exhibit C is a comprehensive and full list of the cases for which any money could be owed now or in the future to Robin, Nieves, PBLLC, and RPA under the Potter Compensation Agreement, as amended (attached hereto as

    Exhibit B), the "Referral Agreement" (defined below and attached hereto as Exhibit

    D), and this Settlement Agreement. It is agreed that no other money is owed to Robin, Nieves, PBLLC, and RPA for any other purpose other than as set forth in this Settlement Agreement.

    For the avoidance of doubt, Exhibits B and D are only attached for illustrative purposes to explain the formulas used for payments and not to permit a double recovery. For example, on Exbibit C, (i) Robin is entitled to various payments pursuant to the Potter Compensation Agreement, as amended

    and (ii) PBLLC are entitled to various payments pursuant to the Referral Agreement. The payments listed under "Fee Split Formula" on Exhibit C are the sole payments that Robin, Nieves, PBLLC, and RPA are entitled to receive for any purpose now or in the future

    REDACTED

10. Fish to change name of FPB to a name that does not include reference to "Potter" or "Bolaños" within 7 days of Closing.

11. Fish to file name change in REDACTED within 7 days of Firm name change; Firm name change filings to follow as promptly as practicable in all other FPB cases.

REDACTED

12. Nieves and Potter agree that Fish has sole firm management decision-making authority upon Closing provided that he has REDACTED otherwise complied with his obligations under this Agreement, and further provided, however, and going forward Fish shall not use Robin's and/or Nieves' names, images, or likenesses in any advertisements, social media postings, or other publications (except as needed for corporate or accounting purposes).

==Fish will not interfere with or, unless requested by Robin or Nieves, work on (Fish has no obligation to do so), any case that Robin or Nieves is or has settled.==

13. No later than the Effective Date, Fish (via the Firm's website and advertising company, Scorpion, or any other vendor used by the Firm to accomplish the directives of this Paragraph) will begin the process of removing any electronic footprint (photographs, case summaries, articles, news, events, successes, etc.) that mention Nieves and/or Potter from the Firm's website, social media accounts, and any other public-facing media platforms or accounts that are within the Firm's control. REDACTED ==Fish will take all steps reasonable and necessary to ensure that the electronic footprints of Robin and Nieves will be removed from the Firm's website, social media accounts, and any other public- facing media platforms or accounts within the Firm's control== by June 1, 2024 (for Robin) and by the conclusion of Nieves' Term (for Nieves).

REDACTED

18. REDACTED

    Potter and Nieves shall be allowed to copy and retain any case files (upon client consent) and work product from matters on which they worked or were created by them (including work product contained in client files, and without need for client consent) during their employment/engagement with the Firm.

    REDACTED

19. Regarding PB's continued access to Firm email accounts and subscriptions:

    REDACTED

    c. Robin's FPB email will remain active and accessible by her until the later of May 31, 2024 or until the forwarding and automatic reply functions have been completed by REDACTED

    REDACTED

20. Except as provided herein and on the schedule attached as  Exhibit C ,Robin waives all right, title and interest to payments under the Potter

Compensation Agreement (as amended) except that Robin (or her designee) will be paid by ACH electronic funds transfer within 10 days from the date when Fish receives fees in the matters in accordance with the fee split formula set forth in the schedule attached hereto as  Exhibit  C .

REDACTED

22.   REDACTED

 Nieves, David, and Robin shall cooperate to protect REDACTED Robin's interests in payments under Exhibit C  REDACTED

24. REDACTED

For each of the cases subject to a fee split formula as set forth in the schedule attached as  Exhibit  C , the Parties agree to keep each other reasonably updated on the status of the matters that they are working on and for which the other Party has an interest and to cooperate to support fee requests as necessary (i.e., to provide a fee affidavit, etc. supporting their fees), including providing their fee and expense itemizations and billings, as necessary, and the Parties shall each exchange their billing and expense records (including for any future firm with whom they are affiliated) for any work, notify each other when a case resolves, and cause their respective firms to make payment within 30 days of the receipt of funds by or on behalf of the client(s).

REDACTED

26. Potter Compensation Agreement as amended will terminate on May 31, 2024 and Robin will no longer have any affiliation with Firm and Fish's obligations to her are governed by this Settlement Agreement and its attachments (and as further memorialized in this Settlement Agreement) and are limited to paying Robin for the cases identified on Exhibit C as specifically referenced therein and providing payment, billing and time records as requested.

REDACTED

### Exhibit C to Settlement Agreement
**Comprehensive List of Cases with "Fee Split Formula"**

REDACTED

| Client Matter | "Nieves Case?" | Future of Case | PB Legacy Case? (matter originated at Potter Bolanos, LLC) | Robin Referral? (matter referred by Robin Potter) | Robin Worked on Matter? | Does Robin Waive Fee? | Fee Split Formula (after costs reimbursed) If Case Results In Fees to FPB |
|---|---|---|---|---|---|---|---|
| REDACTED | | | | | | | |
| Ileana Samanc v. Cozy Corner | Yes | Staying w/ Fish | No | Yes | Yes | No | Robin receives the greater of: (a) 20% of the total fees collected by FPB or (b) her proportional lodestar up to one-third of all fees received by FPB per Potter Compensation Agreement, as amended. |
| Lori LaGatta | No | Staying w/ Fish | No | No | Yes | No | Robin receives her proportional lodestar for her work performed on the case as non-originating attorney per Pott |
| MB (REDACTED) (new matter) | No | Staying w/ Fish | No | Yes | No | No | Robin receives 20% referral fee (i.e., 20% of FPB's net fees) |

REMAINDER OF AGREEMENT REDACTED